**Richard Lee ALFRED, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. B14–85–668–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 6, 1986.

Rehearing Denied Dec. 4, 1986.

Steve Hebert, Baytown, for appellant.

John B. Holmes, Jr. and Winston E. Cochran, Jr., Houston, for appellee.

Before SEARS, CANNON and ELLIS, JJ.

OPINION

CANNON, Justice.

Richard Lee Alfred (Alfred) is appealing his jury conviction for aggravated sexual abuse for which the court below sentenced him to eighteen years confinement in the Texas Department of Corrections. The incident occurred on March 1, 1980, and thus, Alfred was tried under the then prevailing statute, Tex.Penal Code Ann. § 21.05 (Vernon 1974).

In three points of error, Alfred asserts: (1) the evidence was insufficient to support the element of aggravation as found by the jury; (2) the court below erroneously permitted proof of an improper pre-trial identification; and (3) the court below erred in denying his motion to quash based on a plea of double jeopardy. Because we find no merit to these arguments, we affirm the judgment of the court below.

A brief procedural review is essential to an understanding of this case. In Alfred's first trial, the jury convicted him of aggravated sexual abuse, and the trial court sentenced him to eighteen years in prison. Alfred appealed the conviction, and, in an unpublished opinion, the Waco Court of Appeals reversed and remanded for new trial due to an unguarded statement made by the trial court in the presence and hearing of the jury. Alfred filed a motion for rehearing and asked the court to rule on his point of error which complained of the sufficiency of the evidence to sustain the element of aggravation in the indictment for aggravated sexual abuse. The Waco court denied the motion and overruled Alfred's sufficiency point of error in an unpublished opinion on motion for rehearing.

Prior to the second trial, Alfred filed a verified plea of double jeopardy and motion to quash. The basis for his plea of double jeopardy was the alleged misconduct of the prosecutor, which occurred in the first trial. The motion was denied on June 24, 1985, and Alfred proceeded to trial.

Again the jury found Alfred guilty of aggravated sexual abuse, and the court sentenced him to eighteen years in the Texas Department of Corrections. Alfred filed a motion for new trial, which was denied, and gave notice of this appeal.

In his third point of error, Alfred asserts as error the trial court's denial of his pre-trial motion to quash based on his plea of double jeopardy. As previously noted, this appeal arises from Alfred's conviction at his second trial. Alfred argues because there was prosecutorial misconduct at the first trial that provoked him to move for mistrial, a retrial should have been barred by his plea of double jeopardy. We find no error.

Notwithstanding the fact that Alfred did not provide this court with the statement of facts from the first trial and thus furnished us with no record from which to review the prosecutor's conduct, we will nevertheless assume as true Alfred's allegations in order to address his point of error.

The Supreme Court has rendered a number of decisions that discuss the issue of double jeopardy when a defendant moves for mistrial on the basis of judicial or prosecutorial misconduct. *See United States v. DiFrancesco*, 449 U.S. 117, 130, 101 S.Ct. 426, 433–434, 66 L.Ed.2d 328 (1980); *United States v. Dinitz*, 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267 (1976); *United States v. Jorn*, 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971); *United States v. Tateo*, 377 U.S. 463, 468 n. 3, 84 S.Ct. 1587, 1590 n. 3, 12 L.Ed.2d 448 (1964). In *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), the Supreme Court acknowledged the confusion surrounding the standard used to determine double jeopardy in instances where a defendant moved for mistrial on the basis of prosecutorial or judicial misconduct. The Court stated:

Because of the confusion which these varying statements of the standard in question have occasioned in other courts, we deem it best to acknowledge the confusion and its justifiability in the light of these statements from previous decisions.... [W]e do hold that the circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are *limited to those cases* in which the conduct giving rise to the *successful motion for a mistrial* was intended to provoke the defendant into moving for a mistrial.

456 U.S. at 679, 102 S.Ct. at 2091 (emphasis added).

■ Here, Alfred was not successful on his motion for mistrial. The trial ended with a jury conviction. On appeal, the case was reversed and remanded "due to an unguarded statement made by the trial court in the presence and hearing of the jury, which prejudiced Appellant's right to a fair trial...." *Alfred v. State*, No. 10–83–079–CR (Tex.App.—Waco, Jan. 12, 1984). Alfred has no federal claim of double jeopardy.

Moreover, Alfred has no state claim of double jeopardy. In *Durrough v. State*, 620 S.W.2d 134 (Tex.Crim.App.1981), the court held:

The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrials so as to afford the prosecution a more favorable opportunity to convict the defendant. (citation omitted) But when the trial proceeds to its conclusion despite a legitimate claim of seriously prejudicial error, the Double Jeopardy Clause will present no obstacle to a retrial if the conviction is reversed on appeal. (citations omitted) In the present case the alleged *misconduct did not result in a mistrial.* The appellant was found guilty.... That judgment was reversed

on appeal and the case was remanded for a new trial. We reject the appellant's contention that the alleged [prosecutorial] misconduct was a bar to further prosecution for this offense.

*Id.* at 139.

*Durrough* is controlling here. Alfred's point of error three is overruled.

In his first point of error, Alfred maintains that the evidence was insufficient to prove the element of aggravation under Tex.Penal Code Ann. § 21.05(a)(2) (Vernon 1974) as that element was interpreted by *Rucker v. State*, 599 S.W.2d 581 (Tex.Crim. App.1979). We disagree because *Rucker* is factually distinguishable from the case at bar.

*Rucker* involved a conviction for aggravated rape under Tex.Penal Code Ann. § 21.03(a)(2) (Vernon 1974). The court reversed and remanded because the evidence was insufficient to prove the element of aggravation. In *Rucker*, there was no evidence that the defendant had made any express verbal threats to compel submission to the rape, nor was a weapon used. Further, the victim did not sustain any serious bodily injury. The court specifically addressed the question of what proof is necessary to sustain a conviction for aggravated rape where there were no express verbal threats of death or of imminent serious bodily injury, and where no weapon was used. It approved the holding of *Rogers v. State*, 575 S.W.2d 555 (Tex.Crim.App. 1979), that is, absent an express verbal threat, evidence is sufficient to prove aggravated rape under Tex.Penal Code Ann. § 21.03(a)(2) only when a gun, knife or deadly weapon is used or when serious bodily injury is in fact inflicted. *Rucker*, 599 S.W.2d at 586.[1]

■ In the case at bar, because Alfred made express verbal threats to compel submission to the sexual abuse, *Rucker* is

---

**1.** As the court noted in *Seek v. State*, 646 S.W.2d 557, 560 (Tex.App.—Houston [1st Dist.] 1982, no pet.), the legislature amended Tex.Penal Code Ann. § 21.03 in September 1981 to allow the jury to consider the acts, words and deeds of the defendant to decide whether the victim was

placed in fear of death or imminent serious bodily injury. The court stated: "Thus, the fact finder may infer from the totality of the circumstances whether a person's overall conduct placed the victim in fear of death or serious bodily injury." *Id.*

inapposite. Therefore, the inquiry becomes whether the threats made by Alfred placed the complainant in fear of imminent death or serious bodily injury. Because a threat can be communicated by action or conduct as well as words, *Blount v. State,* 542 S.W.2d 164, 166 (Tex.Crim.App.1976), we consider appellant's words to the complainant as well as his actions toward her to decide whether a rational trier of fact could have found Alfred guilty beyond a reasonable doubt of aggravated sexual abuse.

At trial, the complainant testified that her abduction occurred at approximately 3:00 a.m. when she stopped her car on the road after being rear-ended by Alfred's vehicle. She stated that she exited her vehicle at Alfred's request to show him where her vehicle had been hit. She testified that as she tried to get back into her car, Alfred "grabbed" her hand, "pulled me out of the car," "wrestled with me," said "'Don't scream. Don't you dare scream.'" and "threw me in [his truck]." When the complainant tried to escape, Alfred "got very violent, as far as just smacking me around." He drove her to an unpopulated area and subjected her to two and one-half hours of the sexually abusive conduct. During the course of this conduct, the complainant testified that Alfred "grabbed my neck" and said: "'I could hurt your neck real bad,' or, 'I could hurt you real bad.'" She further testified that at one point, when she tried to escape, "he grabbed me again and pushed me down in the seat and told me he would hurt me pretty bad if I tried that again." She also testified that "I thought for sure I was going to be killed" and that Alfred put her in fear of imminent serious bodily injury.

■ Serious bodily injury is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Tex.Penal Code Ann. § 1.07(a)(34) (Vernon 1974). In *Harrison v. State,* 686 S.W.2d 220, 222 (Tex. App.—Houston [1st Dist.] 1984, pet. ref'd), the court held that when a victim is threat-

ened with being knocked out, a rational trier of fact could believe that she was in fear of sustaining serious bodily injury. We conclude that a rational trier of fact could believe that a victim is in fear of sustaining serious bodily injury when threatened that she would be hurt "pretty bad," especially in light of the other actions of Alfred in "wrestling" with her and in "smacking" her around. Because we find that there was sufficient evidence to support the aggravation element of the jury finding, Alfred's first point of error is overruled.

■ In his second point, Alfred assigns error in the trial court's allowance of proof on what he terms was an impermissible and improper pre-trial identification. What Alfred neglects to mention, yet what the record reveals, is that evidence concerning the pre-trial identification was first offered by Alfred's counsel during his cross-examination of the complainant. Appellant cannot complain of the introduction of evidence which he himself introduced. *Adams v. State,* 685 S.W.2d 661, 669 (Tex. Crim.App.1985). However, in the interest of justice, we will address Alfred's issue as presented.

Alfred is not complaining of the admission of the complainant's in-court identification; rather he is complaining of the admission of the complainant's out-of-court identification which occurred at a one-on-one confrontation between Alfred and the complainant, said confrontation being orchestrated by the police officers. The record reveals that after the complainant was released by her abductor, she contacted the police. The police sent her home to get some rest. Two hours later, the police called and asked her to come to the station. At the station, the complainant gave the police officers a detailed description of her abductor and of the vehicle he was driving. She also gave the police the license number "GT–5335." The vehicle registered to this license number did not match the description of the vehicle given by the complainant. When recontacted by the police, the complainant stated that she was sure of

the numbers and the letters, but that she could have reversed the sequence of the numbers. A subsequent registration run on the license number "GT–3553" revealed a vehicle matching the complainant's description as being registered to Alfred.

On March 7, 1980, six days after the incident, the complainant was called to the station to view a five-photo spread which included a picture of Alfred. She testified that she saw an individual who looked very similar to her abductor. (Prior to this photographic spread, the complainant testified that she had looked at photos two previous times, the first time including a perusal through a "big, huge book" of photos.) The police then asked the complainant to accompany them to a different location to see if she could find a vehicle which looked similar to the one which she had described. While at the location, Alfred drove up in the truck which matched the complainant's description. During this time, the complainant was inside of a building at the location. She was called outside to view Alfred, who was standing with the police officers. She identified Alfred as her abductor, and he was arrested. Alfred complains that this one-on-one confrontation deprived him of due process and should have been excluded.

■ Admission of evidence of a one-man showup without more does not violate due process; rather a claimed violation of due process in the conduct of a confrontation depends upon the totality of the circumstances surrounding it. *Garza v. State,* 633 S.W.2d 508, 512 (Tex.Crim.App.1981). Further, even if an identification procedure is suggestive and unnecessary, the admission of identification testimony does not violate due process so long as the identification possesses sufficient aspects of reliability. *Id.* at 513. Factors to be considered are: (1) the opportunity to view; (2) the degree of attention; (3) the accuracy of the description; (4) the witness' level of certainty; and (5) the time between the crime and the confrontation. *Id.*

■ Here, the complainant testified that she spent two and one-half hours with appellant in his truck. During this time, the complainant was subjected to continuous sexual abuse. She testified that the lighting was moderate and that she had an opportunity to get a very close look at the defendant, both during the time she was with the appellant and at the outset of her abduction when the defendant first approached her stopped vehicle and started to talk to her at her car window. She also testified that her in-court identification of Alfred was based on what she remembered from the night of her ordeal. Further, the police officer testified that the complainant's initial description of Alfred was fairly accurate. In addition, the time between the crime and the confrontation was six days, not a lengthy delay during which the complainant may have tended to forget the physical characteristics of the perpetrator of the crime. Moreover, the record demonstrates that the complainant's in-court identification of Alfred was of independent origin, apart from the pre-trial confrontation. *Jackson v. State,* 657 S.W.2d 123, 130 (Tex. Crim.App.1983). *See also Joshlin v. State,* 488 S.W.2d 773 (Tex.Crim.App.1972) (stating that where the in-court identification offered by the State was shown to be of independent origin, and where the appellant, not the State, injected evidence of the out-of-court showup, there was no error). We find no error. Point of error two is overruled.

The judgment of the court below is affirmed.

ELLIS, Justice, dissenting.

Finding myself in disagreement with the other members of the panel, I would like to record my respectful dissent.

This appeal is from a judgment of conviction for aggravated sexual abuse. The alleged date of offense was March 1, 1980. Therefore, appellant was tried under the prevailing statute of that date Tex.Penal Code Ann. § 21.05 (Vernon 1974).

Appellant in his first point of error asserts that the evidence was insufficient to support the element of aggravation as found by the jury. The majority on this

panel disagreed and affirmed the conviction. I agree with appellant's contention and would reverse and remand the cause to the trial court for entry of an order of acquittal.

The basis of the charge against appellant is section 21.05(a)(2) of the Texas Penal Code which was repealed September 1, 1983. Section 21.05 of the Texas Penal Code (1974) provides:

#### Aggravated Sexual Abuse

(a) A person commits an offense if he commits sexual abuse as defined in Section 21.04 of this code or sexual abuse of a child as defined in Section 21.10 of this code and he:

(1) causes serious bodily injury or attempts to cause death to the victim or another in the course of the same criminal episode; or

(2) compels submission to the sexual abuse by threat of death, serious bodily injury, or kidnapping to be imminently inflicted on anyone.

(b) An offense under this section is a felony of the first degree.

The Legislature has defined serious bodily injury in the Texas Penal Code section 1.07(a)(34), as follows:

(34) "Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

The second count of the indictment upon which the instant conviction was based alleged the appellant "did then and there unlawfully with intent to arouse the sexual desire of the defendant and by force and by threatening the imminent infliction of serious bodily injury and death to and without the consent of P——— L——— J———, a person not his spouse, have deviate sexual intercourse with her by placing his penis in her mouth."

The indictment thus charged aggravated sexual abuse under the Texas Penal Code section 21.05(a)(2), compelling submission to the sexual abuse by threatening imminent infliction of serious bodily injury and death.

The question presented by this appeal is whether the evidence was sufficient to support a conviction of aggravated sexual abuse as alleged and, more particularly, whether the element of aggravation as alleged under the Texas Penal Code section 21.05(a)(2) was proven. The aggravating elements contained in section 21.05(a)(2), which elevate the offense of sexual abuse to aggravated sexual abuse, are identical to those contained in section 21.03(a)(2), which elevate the offense of rape to aggravated rape.

In *Rucker v. State*, 599 S.W.2d 581, 586 (Tex.Crim.App.1979) (opinion on rehearing) the Court of Criminal Appeals stated, citing *Rogers v. State*, 575 S.W.2d 555 (Tex.Crim. App.1979), "Absent an express verbal threat, evidence was sufficient to prove aggravated rape under said section 21.-03(a)(2) only when a gun, knife, or a deadly weapon was used, or serious bodily injury was in fact inflicted."

Since the aggravating elements contained in section 21.05(a)(2) of the Texas Penal Code (1974) are identical to those contained in section 21.03(a)(2), I conclude that the same proof is necessary to establish them.

In our case no serious bodily injury was in fact inflicted and no deadly weapon was used or displayed. Therefore, the inquiry becomes whether the verbal threats made by appellant amounted to a threat of death or serious bodily injury. A threat can be communicated or conveyed other than by words. Actions and deeds may also constitute threats. *Seaton v. State*, 564 S.W.2d 721 (Tex.Crim.App.1978).

The complaining witness testified she was abducted by appellant after he rearended her car with his vehicle. She exited her car to inspect the damage. She testified that as she tried to get back into her car, appellant "grabbed" her hand, "pulled me out of the car," "wrestled with me", said "Don't scream. Don't you dare scream," and "threw me in [his truck]." When the complainant tried to open the truck door to escape, appellant "got very violent, as far as just smacking me

around." Appellant drove her to an unpopulated area and subjected her to two and one-half hours of sexual abuse. During this time the complainant stated appellant "grabbed my neck" and said: "I could hurt your neck real bad," or, "I could hurt you real bad." She also stated that at one point, when she tried to escape, "he grabbed me again and pushed me down in the seat and told he would hurt me pretty bad if I tried that again." She also stated, "I thought for sure I was going to be killed" and that appellant put her in fear of imminent serious bodily injury.

I am of the opinion the verbal threats made by appellant to the complainant were not of such a nature amounting to a threat of death or serious bodily injury. Therefore, I would hold the evidence is insufficient to support the element of aggravation as found by the jury.

I would reverse and remand the cause to the trial court for entry of an order of acquittal. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).